UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KIM T. DUNCAN,
        Plaintiff,

vs.                                                 CIVIL NO. 2:08-CV-11067

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY    DISTRICT JUDGE GERALD E. ROSEN
        Defendant                            MAG. JUDGE. STEVEN D. PEPE.
_____/

**REPORT AND RECOMMENDATION**

I. **BACKGROUND**

      Kim T. Duncan brought this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act as of September 18, 2003. Both parties have filed motions for Summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

    A.    **Procedural History**

      On December 14, 2004, Plaintiff applied for DIB alleging disability since September 18, 2003, based on ailments including spinal stenosis, arthritis and allergies (R. 59-61, 66, 87). After Plaintiff's claim was denied upon initial review, an administrative hearing was held on January 24, 2007, before Administrative Law Judge (ALJ) Alfred H. Varga, at which Plaintiff was represented by attorney, Kenneth Laritz (R. 155-166). Vocational Expert (VE) Michael E.

1

Rosko also testified. On March 23, 2007, ALJ Varga decided Plaintiff was not disabled from September 18, 2003, through the date of the decision, because despite her impairments, she could perform unskilled entry level sedentary or sit down type work that exists in significant numbers in the national economy (R. 20-28). On January 25, 2008, this became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (R. 4-6).

>    B.    **Background Facts**
>
>         1.    ***Plaintiff's Testimony and Statements***

Plaintiff was 43 years old at the time of her September 18, 2003, alleged onset of disability (R. 27). Her last date of insured status was March 30, 2008 (R. 22). Plaintiff has a high school education and past relevant work experience as a cashier, residential housekeeper, office clerk, administrative worker, and customer service representative (R. 69-75, 88-89, 92, 162). Plaintiff stopped working in October 2003 as a tax clerk, because she was laid off for non-medical reasons (R. 53, 86).

As a tax clerk, Plaintiff reported lifting 100 pounds at times, sitting 6.25 hours, standing and walking from 1-2 hours (R. 70). After her termination, she collected unemployment benefits and began a part-time job in May 2004, but quit soon afterwards because "the building leaked and I was allergic to mold" (R. 53, 86). She also attempted working at the Salvation Army, but was let go after a few weeks, because "they could not let me sit down as often as I needed while working" (R. 53).

In her disability report, Plaintiff indicated she was unable to stand for long periods of time, could not lift more than one gallon of milk, and got dizzy when bending (R. 88). Plaintiff

reported her daily activities as helping her daughter get ready for school and with her studies, cooking, caring for a pet, sleeping often, preparing simple meals, wiping the counter, light vacuuming, and dusting "every couple months" (R. 95-96). She shopped for groceries once or twice a week, but would need to sit down after 10-20 minutes of shopping (R. 97). Plaintiff reported she could walk from 30-60 minutes (R. 99). She had concentration problems due to pain. In her March 2005 disability appeal report, Plaintiff claimed that her pain required that she take more medication and lay down often (R. 102, 105).

At the hearing, Plaintiff described her back problems since 2003 (R. 156-7). The pain extended from her back on the right side to just above her knee (R. 156-57). Her pain was worse with walking, sitting, standing, and continuous movement (R. 157). She testified she could walk for only 60 feet, sit for 10 minutes at a time, but would want to lie down, stand for 20 minutes, and could lift a loaf of bread or ½ pound of lunch meat (R. 157-58). She stated that she could not lift a gallon of milk (R. 159). She took medication (Darvocet) which provided relief but made her drowsy (R. 159).

### 2. *Medical Evidence*

While Plaintiff reported being injured September 18, 2003, and being off work for two weeks until October 6, 2003, there are no medical records (R. 53). She was laid off when she returned to work for non-medical reasons. A year later, Plaintiff began treatment with Matthew F. Kulick, D.O., from October 19, 2004 through December 26, 2006, for back problems with right leg burning sensation and decreased range of motion (R. 139-152). His initial report does not mention any injury, just an increase in pain in her back and right leg (R. 139).

On October 27, 2004, Plaintiff complained to Gregory A. Zemeniek, M.D., that she

continued to have back and leg pain (R. 127).

On October 28, 2004, Plaintiff was treated at the Dillman Chiropractic for lumbar and right leg complaints (R. 128-29).

Magnetic resonance imaging of the Plaintiff's lumbosacral spine on November 11, 2004, suggested moderate facet arthropathy at L3-4, L4-5 but no disc extrusions; vertebral alignment was intact. The spinal cord, nerve roots and paraspinal soft tissues were unremarkable, with disc spaces intact (R. 126). On November 29, 2004, Dr. Zemenick noted that the Plaintiff had significant spinal stenosis with bulging and recommended an epidural injection (R 127).

On January 24, 2005, the Plaintiff was examined by Ronald S. Taylor, M.D., for a complaint of severe low back pain with radiation to the right leg since September 18, 2003 (R 130-31). Plaintiff complained of pain with spinal extensions and straight leg raises. Neurologically she was intact. Hip, knee and ankle motion were normal. Dr. Taylor diagnosed a low-grade lumbar radiculopathy, non-surgical based on the MRI with a lack of neurologic deficit. He recommended epidural steroids and ibuprofen. He further wrote that Plaintiff was to obtain a stationary bike and begin proximal symmetric non-impact aerobics. Based on Plaintiff's statements that physical therapy made her condition worse, Dr. Taylor felt that further physical therapy would not be beneficial.

February 2005 records of Dr. Kulick show Plaintiff used Valium for anxiety and to help quit smoking, and she was switched to Xanex, 1 mg. twice daily and Motrin three times daily for pain (R. 143). On March 3, 2005, state agency medical consultant Don Harris reviewed the medical evidence and concluded Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for 6 hours each in an 8 hour workday (R. 113). Plaintiff could

occasionally perform postural activities, except for ladder/rope/scaffolds (R. 114).

On April 22, 2005, David L. Hunstad, M.D., examined the Plaintiff for low back and right leg pain (R. 132-33). She reported injuring her back and radiation into her right leg while moving a boulder in a wheelbarrow several years earlier (R. 144). Upon physical examination, her low back was without significant point tenderness. Her paraspinous musculature had mild discomfort. She reported slight pain overlying both SI joints, which Dr. Hunstad concluded was not dramatic. Her deep tendon reflexes were 3+ on the right and 1+ on the left. She had two- to three-beat ankle clonus on the right and one beat on the left. Her motor and sensory examination was "grossly normal" in both lower extremities (R. 133). The doctor's assessment was chronic low back pain with chronic radiculopathy with possible facet syndrome in the lumbar region with a plan to start lumbar epidural steroid injections (R. 133).

On July 22, 2005, Dr. Taylor reported that Plaintiff's two epidurals provided minor relief and overall improvement (R. 135 ). Plaintiff took Neurontin, which helped to significantly decrease her problem, but she still had a feeling as though her feet were swollen intermittently though they clinically were not. Dr. Taylor described the MRI as showing "only degenerative changes." (R. 135). Overall, there was gradual improvement. Neurologically she was unchanged. Neurontin was continued with a recommendation to consider a median branch block if the medication did not take care of the symptoms (R. 135-36).

In November 2005, Plaintiff reported her symptoms had not improved (R. 148). Yet a new MRI indicated no change from Plaintiff's November 2004 MRI (R. 148). The following several months showed little involvement with medical practitioners. On December 21, 2005, Plaintiff was seen for a complaint of eye pain and burning (R. 149); a

January 2006 visit was for a medication refill (R. 149); a February 11, 2006, visit was for a sinus infection (R. 149); and follow ups occurred in March, April, May, and August 2006, for medication refills, back pain and other paperwork. (R. 150-52).

On April 12, 2006, Dr. Kulik noted that the Plaintiff was doing much better since the epidural block was given on April 5 with a second block scheduled for April 17, 2006. (R. 138, 151)

### 3.     *Vocational Evidence*

VE Rosko described Plaintiff's past work of office manger/customer service as semi-skilled work performed at the sedentary to heavy level (R. 162).

ALJ Varga posed the following hypothetical to VE Rosko – assume an individual of the same age, education, and work experience as the Plaintiff, who had a sedentary, sit-down job with an option to sit or stand at will, no work at unprotected heights or around hazardous machinery, and work that was simple and routine, low stress and did not require reaching above the chest or shoulder level (R. 164).

VE Rosko stated that he believed that such an individual could transfer skills from her past relevant work to assembly, sorting and perform visual inspection (R. 164). Approximately 6,000 of these jobs exist in the region with double that number of jobs in the State of Michigan (R. 164-65).

### 4.     *ALJ Varga's Decision*

ALJ Varga found that Plaintiff met the insured status requirements of the Social Security Act through March 30, 2008, and that she had not engaged in substantial gainful activity since her alleged onset date of September 18, 2003 (R. 22). He found that Plaintiff's status lumbar

radiculopathy, moderate facet arthropathy, L3-4 and L4-5, spinal stenosis and arthritis were a "severe" impairments within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 20).

ALJ Varga found that Plaintiff retained the RFC to perform unskilled entry level sedentary or sit down type work, which would afford her the complete freedom to sit or stand off and on at will and continuing to perform the assigned tasks, and which jobs would not be performed at any unprotected heights requiring climbing or driving or work around dangerous or hazardous machinery, which would be relatively simple and routine in nature not requiring more than a few steps in the completion of the assigned tasks, which would be relatively low in stress, and which would not require reaching over chest or shoulder level (R. 23-4). Considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform (R. 27).

The ALJ found that Plaintiff's allegations regarding her pain and functional limitations were not totally credible (R. 26).

## II.     Analysis

In her motion for summary judgment, Plaintiff argued that (1) ALJ Varga improperly assessed her credibility as to effects, symptoms, limitations and complaints of pain; (2) The ALJ failed to pose complete and accurate hypothetical questions to the vocational expert; and (3) The ALJ's decision was not supported by substantial evidence (Dkt. # 9, p 7).

### A.     Standards of Review

Plaintiff must establish that she became disabled under Title II of the Act prior to March

30, 2008, the date her insured status expired. *See* 42 U.S.C. § 416(I); 20 C.F.R. §§ 404.131(a), 404.320(b)(2)*; Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment(s) must be of such severity that the individual can neither do her previous work nor engage in any other kind of substantial gainful work which exists in the national economy, considering her age, education, and work experience. *See id.* § 423(d)(2)(A).

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. *Id*. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076

(6th Cir. 1987); *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.  A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.  *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray Plaintiff's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs*., 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the Plaintiff's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the Plaintiff."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

**B.     Factual Analysis**

**I. Plaintiff's Credibility at Issue**

Plaintiff challenges the Commissioner's decision arguing that the ALJ's credibility

finding is not supported by the record because it fails to adequately assess Plaintiff's subjective estimation of her pain and limitations due to her back pain.  Subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)) (*See Young v. Secretary,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Secretary,* 801 F.2d 847, 852 (6th Cir. 1986) (Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain).  The issue of a claimant's credibility regarding subjective complaints is largely within the scope of the ALJ's fact finding discretion – the Commissioner's "zone of choice" – if adequately explained and supported by the record.

The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  The ALJ must, however, do more than say the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain.  *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.

ALJ Varga had substantial evidence to discredit Plaintiff's testimony.  ALJ Varga

measured Plaintiff's testimony against the objective medical evidence, the claimant's daily activities, the location, duration, frequency and intensity of her pain, precipitating and aggravating factors, use of medications and treatment other than medications (R. 24-26). Based on a comparison of her claims with the above mentioned factors, ALJ Varga found Plaintiff's testimony not "entirely credible." (R. 26).

Plaintiff argues that there was ample evidence in the record to support her self reporting functional limitations, such as treatment notes of various physicians confirm persistent complaints of pain and limitations that were not relieved by physical therapy, epidural injections, or medication; Plaintiff also claims that there exists medical documentation that she obtained relief from lying down (R. 130). It first must be noted that the evidence cited by Plaintiff is evidence only of Plaintiff's complaints of pain and subjective limitations, none of the evidence concludes that Plaintiff was as limited as she claimed. Furthermore, while laying down certainly could have provided her with relief, none of the doctors concluded that this was a requirement for her.

The medical records show no significant event in 2003 or following, though Plaintiff noted some injury in September, 2003. She left her job in October being laid off for non-medical reasons (R. 53). That job required her to lift 100 pounds at times, sit for up to 6.25 hours, and stand and walk from 1-2 hours (R. 70). She collected unemployment insurance (R. 53) until she began a part-time job in May, 2004, which she quit due to her allergy to mold.[1] Her work

---

[1] Collection of unemployment benefits, though not conclusive, is some evidence the claimant believes he or she is capable of working. *See e.g. Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) (because an application for unemployment benefits necessarily indicates an ability to work, this may be some evidence, though not conclusive, to negate a claim of disability).

attempt at Salvation Army did not continue because it did not provide sufficient opportunity to sit. The first medical evidence after her September 2003 alleged onset date is October 19, 2004, when she first saw Dr. Kulick for her back and leg pain (R. 139). All of this could be treated as some evidence that Plaintiff in 2004 could work if the job accommodated her need to sit of stand as needed.

While Plaintiff is impaired with stenosis at L3-4, L4-5, with some bulging, there is no disc extrusion and what was described as low-grade lumbar radiculopathy with no apparent need for surgery.

As to Plaintiff's daily activities, she contends that her activities do not equate with working an 8 hour day. The ALJ, however, never equated her daily activities with a full work day, instead he took her activities into consideration when assessing her credibility (R. 24). He found that she could take care of her personal needs and tend to her daughter, answer the telephone, make telephone calls, listen to radio, pay bills, help with her daughter's homework, prepare dinner and handle mail. In addition, she went grocery shopping, albeit only when absolutely necessary and with her daughter's help. She performed light housekeeping including laundry, making the bed, light vacuuming, dusting and wiping the counter. Plaintiff went to bed at 9 to 9:30 and awoke up at 7:30 a.m. although she got up throughout the night due to back pain. He found that she lays down the majority of the day unless she is shopping, she can walk periodically and drive a car for no more than 20 minutes (R. 24).

The ALJ also discussed, the type, dosage, effectiveness and side effects of medication, noting that in July 2005, Plaintiff reported that she was taking Neurontin twice a day with no side effects and with a significant decrease in her pain level (R. 25, 135). As for other

12

treatments, Plaintiff obtained relief with noted improvement from epidural blocks (R. 26, 138, 151).

The ALJ also noted modest inconsistencies between her earlier reports and her claims at the hearing (R. 26).  In her December 28, 2004, Disability Report she indicated, "I am unable to lift over 8 lbs (gallon of milk)" (R. 88), which suggests she could lift up to that weight.  Yet at the hearing, Plaintiff denied that she could lift an 8 pound gallon of milk claiming she could lift only ½ pound or a loaf of bread.  Plaintiff claimed at the hearing she could only walk only 60 feet but she reported earlier she could walk for 30 to 60 minutes (R. 157 and 99).

Plaintiff argues that there was ample evidence in the record to support her self reporting functional limitations.  It is true that this record has evidence both supporting and distracting from a finding of disability.   But as noted in the *Mullen* case above, this is not sufficient for a claimant to prevail.  The question before this Court is whether there is sufficient evidence to support the ALJ's rejection of Plaintiff's claim of disability.

ALJ Varga found her back condition to be severe and took into consideration Plaintiff's complaints of pain when requiring that she be limited to work that provided her the freedom to sit or stand at will and because of the side effects of her pain medication she would be limited to work that would not be performed at any unprotected heights requiring climbing or driving or work around dangerous or hazardous machinery (R. 26-7).

While ALJ Varga could have been more specific on the reasons he used to discredit Plaintiff's testimony concerning her level of pain, he had a reasonable basis to do so to the extent that Plaintiff could perform a limited range of assembly, packaging, sorting and visual inspection jobs (R. 28).   Plaintiff's claims of a worsening in her condition at her hearing are unsupported

13

by the medical record; she was noted to be improved on several occasions, and her 2005 MRI showed no change from her November 2004 MRI.  Therefore, it is recommended that ALJ Varga's credibility determination not be overturned.

### II. Hypothetical Question posed to Vocation Expert

Plaintiff claims that the ALJ asked the VE an incomplete hypothetical question because he did include all of Plaintiff's limitations.  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  To meet the burden of showing that Plaintiff could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [she] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [his] individual physical and mental impairments.'" *Id.*  (citations omitted).

Contrary to Plaintiff's claim, the hypothetical questions the ALJ asked the VE, and the corresponding answers the ALJ relied on, were adequate and proper because the hypothetical relied on included all of Plaintiff's substantiated impairments and resultant limitations. The ALJ may pose hypothetical questions to the VE which include only those limitations which the ALJ finds credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff's challenge to the hypothetical question is based in part on the ALJ's credibility finding discrediting Plaintiff's subjective estimation of her pain.  For the reasons

stated above, the ALJ had substantial evidence to reject the degree to which Plaintiff claimed she was limited by her pain.

Unlike cases where mental limitations are found by a psychological evaluator or an ALJ to moderately impair a claimant's concentration, persistence or pace, there is not comparable evidence in this record that any medication or pain reduced Plaintiff's concentration to such a degree that she could not perform the simple, routine and low stress jobs noted by ALJ Varga.

ALJ Varga's hypothetical questions to VE Rosko upon which he ultimately relied adequately described Plaintiff's condition.  ALJ Varga proffered a hypothetical individual of the same age, education, and work experience as the Plaintiff, who had a sedentary, sit-down job with an option to sit or stand at will, no work at unprotected heights or around hazardous machinery, and work that was simple and routine, low stress and did not require reaching above the chest or shoulder level (R. 164). VE Rosko testified that an individual of Plaintiff's age, education, and work history with those limitations could perform entry-level unskilled jobs involving assembly, packaging, sorting and visual inspection (R. 164).  Approximately 6,000 of these jobs exist in the region and double that amount for the State of Michigan  (R. 164-65).

Based on the testimony of VE Rosko, a reasonable ALJ could conclude that there existed sufficient jobs which Plaintiff could perform even though she could not engage in any of her past relevant work.  Therefore, it is recommended that ALJ Varga's hypothetical question not be overturned.

### III.  Substantial Evidence

The record as a whole supports the ALJ's assessment of the nature and severity of the

limitations caused by Plaintiff's impairments. None of the physicians who examined and diagnosed Plaintiff indicated a belief that would preclude her ability to return to work. Under 42 U.S.C. 405(g), Congress has limited federal court's authority in disability reviews, and if substantial evidence supports the ALJ's decision, as it does in this case with many medical sources supporting the ALJ's finding, it must be affirmed – even if substantial evidence also supports the opposite conclusion, and even if this Court would have reached a different conclusion. *See Buxton v. Halter*, 246 F.3d 762, 772-773 (6th Cir. 2001)(substantial evidence standard encompasses a "zone of choice" within which the Commissioner can act without court interference (internal citations omitted)). Given the medical evidence and the evidence that Plaintiff could manage her personal care needs, and in all other respects is able to function on a daily basis, substantial evidence supports the ALJ's decision.

### IV. Recommendation

For the reasons stated above, it is Recommended that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 18, 2009  
Ann Arbor, Michigan

s/Steven D. Pepe  
United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 18, 2009.

s/Deadrea Eldridge  
Generalist Deputy Clerk